UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH KAY MASSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:16-cv-00887 |
| v. ) | Judge Crenshaw |
| ) | Magistrate Judge Brown |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

To: The Honorable Waverly D. Crenshaw, Jr., United States District Judge

## REPORT AND RECOMMENDATION

The Plaintiff brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Social Security Commissioner's denial of her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. For the following reasons, the Magistrate Judge **RECOMMENDS** that the Plaintiff's motion for judgment on the administrative record (Doc. 15) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

In June 2012, the Plaintiff applied for disability insurance benefits and supplemental security income, alleging an onset date of February 22, 2012. (Doc. 13, pp. 124, 131).[1] Her applications were denied on initial review and again upon reconsideration. (Doc. 13, pp. 59-62). An administrative hearing was convened at the Plaintiff's request. (Doc. 13, p. 27). The administrative law judge ("ALJ") issued an unfavorable decision on October 17, 2014. (Doc. 13, p. 8). The Appeals Council declined to review the ALJ's decision. (Doc. 13, p. 1). The Plaintiff

---

[1] References to the administrative record, docket entry 13, are to the Bates stamp at the lower right corner of each page.

1

then filed a complaint seeking review of the ALJ's decision. (Doc. 1). The Plaintiff moved for judgment on the administration record (Doc. 15) to which the Defendant responded (Doc. 19) and the Plaintiff replied (Doc. 20). The matter is ripe for resolution.

## II. REVIEW OF THE RECORD

### A. Medical Evidence[2]

Records from Centennial Medical Center show the Plaintiff was admitted in July 2010 and again in February 2011 for respiratory distress, asthma, obstructive sleep apnea, allergies, hypertension, obesity, and pneumonia. (Doc. 13, pp. 235-238, 241-246). A July 2010 chest x-ray was unremarkable. (Doc. 13, p. 239). Upon finding nodular density in the left lung in February 2011, a chest CT was ordered. (Doc. 13, p. 248). The CT provided the impression that the lung nodule was due to atelectasis[3] and inflammatory changes. (Doc. 13, p. 247).

On a monthly basis from June 2011 to September 2011, the Plaintiff presented to Dr. Salim Mehio, M.D., at the Frist Clinic for complaints of coughing, wheezing, sneezing, congestion, and asthma. (Doc. 13, pp. 256-261). In September 2011, the Plaintiff was improving in response to allergy drops. (Doc. 13, p. 258).

The Plaintiff was treated by Dr. David Haase, M.D., at the MaxWell Clinic from December 2009 to June 2014. The vast majority of her treatment records show she had no respiratory difficulties. (Doc. 13, pp. 263, 269, 274, 278, 283, 288, 290, 297, 301, 306, 310, 319, 333, 338, 343, 353, 610, 613, 618, 626, 630, 839, 843, 847, 851, 867, 871, 906, 910, 915, 919, 923). She complained of asthmatic symptoms on several occasions before the alleged onset date of disability. On one occasion in 2010, she believed her asthma was caused by her medication

---

[2] Only relevant medical evidence is discussed herein. Aside from the new information submitted to the Appeals Council (Doc. 13, pp. 233-234, 964-1154), the remainder of the administrative record is incorporated by reference.

[3] Atelectasis refers to the incomplete expansion of a lung or portion of a lung. Elsevier Saunders, *Dorland's Illustrated Medical Dictionary* 171 (32nd ed. 2012).

and thereafter switched to her previous medication. (Doc. 13, p. 841). During another visit, she alleged worsening symptoms due to pollen in the air, but the records showed normal respiration. (Doc. 13, pp. 921, 923). She reported that she had been hospitalized twice for asthma attacks in 2010. (Doc. 13, p. 845). She complained about asthmatic symptoms in July 2011, but treatment notes revealed a normal respiratory rate and pattern with no distress. (Doc. 13, pp. 267, 269). Records show she was wheezing in September 2011. (Doc. 13, p. 294). She complained of coughing and asthma after exposure to perfume, floor-stripping chemicals, and mildew at work and church in November and December 2011. (Doc. 13, pp. 312, 321, 325). After the alleged onset date of disability, her complaints became less frequent. In March 2012, she complained of a recent asthma attack and reported that she had been off her Prednisone for three weeks without an attack for two months. (Doc. 13, p. 340). During the visit, her respiration was normal. (Doc. 13, p. 343). The Plaintiff was wheezing on May 14, 2012. (Doc. 13, p. 348). In November 2013, the Plaintiff stated she "[n]eeds a letter saying her condition is 'basically unchanged and fit to work in a chemical free environment otherwise her condition will be exacerbated.'" (Doc. 13, p. 611). On January 6, 2014, the Plaintiff reported that recent exposure to perfume had exacerbated her asthma for which she used a nebulizer, Singulair, and Advair. (Doc. 13, p. 619). She presented on May 19, 2014 to have her Social Security paperwork completed. (Doc. 13, p. 632). She later visited on May 27, 2014 "to have the [Social Security] paperwork redone reflecting her abilities at her worse [sic]." (Doc. 13, p. 865). During the visit, her respiration was normal. (Doc. 13, p. 867).

The Plaintiff was also treated by Dr. Jatin Kadakia, M.D., from Clarksville Pulmonary and Critical Care. A September 30, 2011 pulmonary function test was normal but suggested that the Plaintiff may have asthma. (Doc. 13, p. 369). She was observed to be wheezing and have

decreased air entry in July 2012. (Doc. 13, p. 395). On August 20, 2012, the Plaintiff reported that she was feeling a lot better since taking Advair, she had no complaints of wheezing, she had only used her inhaler once in three weeks, and her CPAP was working very well. (Doc. 13, p. 387). From this point on, Dr. Kadakia's treatment notes generally reveal normal respiration and well-controlled asthma and allergies. (Doc. 13, pp. 389, 595, 598-599, 603). In May 2014, the Plaintiff requested a new nebulizer and a new CPAP. (Doc. 13, p. 592). She reported that her eight-year-old CPAP was no longer working because of an accumulation of dust. (Doc. 13, p. 592). She reported using her inhaler every six to eight hours,[4] she occasionally had dyspnea, wheezed, and coughed, and she had not visited the emergency room or urgent care in the past year for asthma. (Doc. 13, p. 592).

From January 2013 to September 2013, the Plaintiff was treated at Gateway Medical Center for pain in her jaw and tooth. (Doc. 13, p. 422). Throughout her time at Gateway Medical Center, the Plaintiff did not display respiratory issues. (Doc. 13, pp. 423, 432, 447, 453, 505, 519, 528, 552, 557, 560, 734, 740, 744, 748, 777). Similarly, records from Mid-Cumberland Infectious Disease showed no respiratory issues from February 2013 to April 2013. (Doc. 13, pp. 657, 660, 663, 666, 669, 672).

**B. Opinion Evidence**

The Plaintiff applied for disability benefits on account of asthma, allergies, and other "disorders." (Doc. 13, p. 156). She worked as a nurse from 1990 to 2012 where she was required to walk and stand eleven hours a day, sit for one hour a day, stoop, knee, and crouch for four hours a day, and write and reach eleven hours a day. (Doc. 13, p. 157). The heaviest weight she lifted was ten pounds, and she frequently lifted less than ten pounds. (Doc. 13, p. 158). She stated that she could perform her duties at work until she was exposed to allergens, such as

---
[4] This inhaler was prescribed to be taken every six hours. (Doc. 13, p. 593).

perfume and cleaning products. (Doc. 13, p. 162). With respect to activities of daily living, such as preparing meals and performing household chores, the Plaintiff mainly claimed allergen-based limitations. (Doc. 13, pp. 163-167). She alleged difficulty lifting, squatting, bending, reaching, walking, talking, stair climbing, and completing tasks. (Doc. 13, p. 167). She estimated she could walk about a quarter of a mile in air conditioning without stopping for a ten to fifteen-minute break. (Doc. 13, p. 167). She also stated she was often unrested due to sleep apnea, but noted that her CPAP was helping. (Doc. 13, p. 173).

On December 9, 2011, Dr. Walton, D.O., from the Office of Personnel Management ("OPM") found the Plaintiff not fit for duty unless her respiratory disorders could be accommodated. (Doc. 13, p. 683). As a result of her environmental allergies, the Plaintiff was removed from employment in February 2012. (Doc. 13, pp. 687-691). The Plaintiff later received a notice of proposed removal in February 2014. (Doc. 13, pp. 756-759). According to the notice, a December 9, 2013 letter signed by Dr. Haase stated that the Plaintiff could work when she did not have direct, sustained exposure to triggers and when she could walk away from strong smells. (Doc. 13, p. 757). In response to Dr. Haase's letter, three positions were identified as potentially suitable for the Plaintiff. (Doc. 13, p. 757). Before the evaluation was completed, the Plaintiff retracted her request for a workplace accommodation and decided not to return to work. (Doc. 13, p. 757). On April 9, 2014, OPM approved the Plaintiff's application for disability retirement on account of COPD. (Doc. 13, p. 760).

Dr. Haase submitted an undated medical statement to the Plaintiff's former employer in which he opined that the Plaintiff "must work in a 'chemical free' environment." (Doc. 13, pp. 211-218). On November 1, 2011, Dr. Haase wrote a letter in which he opined that exposure to allergens will exacerbate the Plaintiff's COPD, asthma, and bronchitis. (Doc. 13, pp. 680-681).

5

He opined that the Plaintiff should have limited or no direct exposure to triggers, and "she requires an allergen free and chemical free environment in order to perform work duties." (Doc. 13, p. 681). On June 4, 2014, Dr. Haase signed the same statement that he wrote on November 1, 2011. (Doc. 13, pp. 764-765). He also filled out an undated physical capacity evaluation for the Plaintiff, which he said reflected the Plaintiff when she was symptomatic. (Doc. 13, p. 766). According to Dr. Haase, when the Plaintiff is symptomatic, she can only sit, stand, or walk one hour each in an eight-hour workday; can never lift weight, push or pull, use feet for repetitive movement, perform postural activities, or be exposed to any environmental hazards; can occasionally grasp, perform fine manipulation, and reach; and cannot work a forty-hour week. (Doc. 13, p. 766).

On November 16, 2012, state examiner Dr. Samuel Sullivan, M.D., concluded that the Plaintiff's asthma was not severe because she responded well to Advair. (Doc. 13, p. 416).

Dr. Susan Warner, M.D., a state examiner, performed a physical residual functional capacity ("RFC") assessment of the Plaintiff on April 8, 2013. (Doc. 13, pp. 582-590). Dr. Warner opined that the Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand, walk, and sit for six hours in an eight-hour workday, and push and pull without additional limits. (Doc. 13, p. 583). Dr. Warner opined that the Plaintiff could frequently perform postural activities. (Doc. 13, p. 584). Dr. Warner found no manipulative, visual, or communicative limitations, and opined that the Plaintiff's only environmental limitation consisted of avoiding even moderate exposure to fumes, odors, dusts, gasses, poor ventilation, etc. (Doc. 13, pp. 585-586). Because the record did not support the severity of the symptoms alleged, Dr. Warner found the Plaintiff only partially credible. (Doc. 13, p. 589).

State examiner Sherita Orr-Fonseca evaluated the Plaintiff on April 9, 2013. (Doc. 13, pp. 185-188). Identifying the same RFC as Dr. Warner, Ms. Orr-Fonseca was unable to evaluate the Plaintiff's past relevant work from the information provided, but opined that the Plaintiff could also adjust to other work. (Doc. 13, pp. 185-188).

**C. The Administrative Hearing**

The Plaintiff testified that her disability began in February 2012 when she was let go from her job as a registered nurse due to her extensive sick leave. (Doc. 13, pp. 31-32, 52). Before that time, she had worked at night to avoid hospital traffic, and until late 2010 the housekeepers had not stripped and waxed the floors when she was on duty. (Doc. 13, p. 36).

The Plaintiff testified that she experiences two or three asthma attacks a month which incapacitate her for three days to a week. (Doc. 13, p. 33). She stated these attacks occur when she is outside her home, such as at the library or bank. (Doc. 13, p. 37). Even the carpeting present at the administrative hearing bothered her, she said. (Doc. 13, p. 37). She stated that she visits the emergency room at least four or five times a year for breathing problems. (Doc. 13, p. 38). She called an ambulance on one occasion because she had an allergic reaction to her asthma medication, and this has not reoccurred since switching medicines. (Doc. 13, pp. 38-39). Though she has been taking a holistic approach by eating foods in their raw state, she said that controlling her environment works best to control her asthma. (Doc. 13, p. 47).

She described her home as a clean environment without perfumes, colognes, or carpeting. (Doc. 13, p. 34). She can do laundry and clean as long as she does not use products that flare up her asthma. (Doc. 13, p. 49). She shops for clothes online and only goes out to dinner occasionally. (Doc. 13, pp. 40-41). Before she moved in with her father, she did her own grocery shopping, but she said she had to hold her breath when walking by the cleaning supplies aisle

7

and occasionally could not complete her shopping. (Doc. 13, pp. 42-43). She explained that her social activities are restricted by people wearing fragrances, and she drives herself to avoid exposure to smells and fumes. (Doc. 13, pp. 41-42). She goes to the library about twice a week for about thirty minutes at a time, and when she goes to church she is there for approximately three hours. (Doc. 13, pp. 45, 50).

The ALJ presented several hypotheticals to the vocational expert. (Doc. 13, pp. 52-55). In response to the RFC ultimately selected by the ALJ, the vocational expert testified that such an individual could perform the Plaintiff's past work as well as other jobs. (Doc. 13, pp. 52-53).

**D. The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

(2) The claimant has not engaged in substantial gainful activity since February 22, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: asthma, systemic inflammatory response syndrome, sleep apnea, and obesity (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [l]ift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8 hour workday; sit for 6 hours in an 8 hour workday; frequently balance, stoop, kneel, crouch, crawl, and climb; and should avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation.

(6) The claimant is capable of performing past relevant work as a registered nurse, DOT Code 075.364-010, a skilled, medium exertional position. This work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 CFR 404.1565 and 416.965).

(7) The claimant has not been under a disability, as defined in the Social Security Act, from February 22, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Doc. 13, pp. 13-20) (emphasis omitted).

### III. LEGAL STANDARDS

#### A. Standard of Review

Judicial review of the Commissioner's disability determination is strictly limited to deciding whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to reach that decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The Commissioner's decision is supported by substantial evidence if it reasonably supports the Commissioner's conclusion, even if substantial evidence also supports a different conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).

#### B. Administrative Proceedings

The regulations implementing the Social Security Act provide a five-step inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant does not have a severe medically determinable impairment that meets duration requirements, she is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Fourth, the claimant is not disabled if based on her RFC she can perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, if the

claimant can perform other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof through the first four steps, and the burden shifts to the Commissioner should the fifth step be reached. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## IV. ANALYSIS

The Plaintiff raises several claims of error: (1) the ALJ did not give appropriate weight to Dr. Haase's opinion; (2) the ALJ gave too much weight to Dr. Warner's opinion; (3) the ALJ should have discussed Dr. Walton's opinion; (4) the Court should consider Dr. Kadakia's new opinion; (5) the ALJ improperly discounted the Plaintiff's credibility; and (6) the ALJ erred by failing to address disparities in the vocational expert's testimony. (Doc. 16, pp. 7-15). These claims of error are addressed in turn.

**A. Dr. Haase's Opinion Evidence**

The ALJ gave appropriate weight to Dr. Haase's medical source statement describing the Plaintiff when she is symptomatic and provided good reasons for giving the opinion little weight.

The ALJ will give a treating physician's opinion controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If controlling weight is not given to the treating physician's opinion, the ALJ applies the following factors to determine the appropriate weight: the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; whether the opinion is supported by medical evidence; whether the opinion is consistent with the record as a whole; the physician's specialization; and any other factors that

support or contradict the opinion. *Id.* §§ 404.1527(c), 416.927(c). The ALJ must give "good reasons" for the weight given to a treating source's opinion. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). These good reasons must have an evidentiary basis and be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

The ALJ appropriately found that Dr. Haase's medical source statement was inconsistent with the evidence in the record and provided good reasons for giving the statement little weight in determining the Plaintiff's RFC.

Most significantly, the ALJ noted that Dr. Haase's opinion was tailored to the Plaintiff's functional abilities at her worst when she is symptomatic. (Doc. 13, p. 19). This is an important distinction, for the ALJ only found one acute exacerbation of the Plaintiff's allergies during the period at issue, on January 20, 2014. (Doc. 13, pp. 19, 626). Based on this finding, the ALJ concluded that Dr. Haase's medical source statement of the Plaintiff at her worst did not accurately reflect the Plaintiff's RFC on a longitudinal basis. (Doc. 13, p. 20). When a claimant has "good days" and "bad days," it is well within the ALJ's discretion to consider whether the bad days are not severe enough or frequent enough to preclude regular work. *See Wyatt v. Colvin*, No. 3:14-CV-02287, 2016 WL 1126505, at *19 (M.D. Tenn. Mar. 18, 2016) (quoting *Cavazos v. Soc. Sec. Admin.*, No. 2:09-0112, 2011 WL 4947453, at *7 (M.D. Tenn. Sept. 29, 2011), *report and recommendation adopted sub nom. Cavazos v. Astrue*, No. 2:09-CV-00112, 2011 WL 4957386 (M.D. Tenn. Oct. 18, 2011)). It is more likely that the first medical source statement filled out for the Plaintiff, which is not found in the record, shows a more longitudinal assessment.

Attempting to rebut the ALJ's finding of a single exacerbation, the Plaintiff cites four pages of the record for the proposition that she had several acute exacerbations requiring hospitalization and missed a significant amount of work during her last two years of employment. (Doc. 16, p. 8). The pages cited are unpersuasive. They reveal that the Plaintiff was hospitalized in July 2010 and February 2011, long before the onset date of disability. (Doc. 16, pp. 235, 241). Records predating the alleged onset date are not completely irrelevant. *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006). But they do not prove persuasive when circumstances change, such as reacting positively to medication. In July 2012, the Plaintiff complained of asthma but was not compliant with her prescriptions. (Doc. 13, p. 391). She reported three weeks later that she was much improved after taking Advair. (Doc. 13, p. 387). With respect to the allegation that she missed fifty-eight percent of work due to allergies, the ALJ found the Plaintiff could work as a registered nurse as it is generally performed, not in the particular hospital where the Plaintiff's supervisor allegedly denied workplace accommodations. (Doc. 13, pp. 20, 32). The ALJ's finding of only one acute exacerbation during the period at issue is supported by substantial evidence.

In addition to finding that the Plaintiff's RFC was greater than her symptomatic limitations, the ALJ provided good reasons for rejecting Dr. Haase's opinion that the Plaintiff needs "an allergen free and chemical free environment in order to perform work duties" as unsupported by the longitudinal record. (Doc. 13, p. 20). The ALJ found that the Plaintiff had been able to work for many years when exposed to cleaning chemicals and perfumes. (Doc. 13, p. 20). Her respiratory issues became severe when the hospital cleaning staff began waxing and buffing floors during her shift. (Doc. 13, p. 20). The Plaintiff has been able to navigate away from environmental triggers in public places, and similar accommodations at work would allow

her to continue employment. (Doc. 13, p. 20). Last, the ALJ noted that the Plaintiff did not display respiratory problems while at the administrative hearing which was not in an allergen or chemical free environment. (Doc. 13, p. 20).

Finding Dr. Haase's medical source statement inconsistent with the record, the ALJ considered the appropriate factors in giving the opinion little weight. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ noted that Dr. Haase was the Plaintiff's primary care provider and considered the length of the treatment relationship. (Doc. 13, pp. 17, 19). The ALJ additionally considered the testing Dr. Haase had performed on the Plaintiff, the course of treatment, and the consistency of Dr. Haase's opinion with the remainder of the record. (Doc. 13, pp. 17, 19-20).

The ALJ provided good reasons for giving Dr. Haase's opinion little weight, and the ALJ's decision is supported by substantial evidence. This claim of error fails.

**B. Dr. Warner's Opinion Evidence**

The ALJ did not err by giving Dr. Warner's opinion substantial weight. By regulation, ALJs are required to consider the findings of state agency physicians, such as Dr. Warner. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Where a treating physician's opinion is not given controlling weight, opinions provided by state agency physicians are given weight based on the same factors identified above. *See id.* §§ 404.1527(c), 416.927(c). The ALJ found Dr. Warner's opinion to be supported by the record, both at the time it was given and at the time of the ALJ's decision. (Doc. 13, p. 19). In doing so, the ALJ properly remarked that Dr. Warner had not considered the new evidence in the record. *See Blakley*, 581 F.3d at 409 (stating that the ALJ may give a state agency examiner's opinion great weight, but it must be noted if the examiner did not consider the entire record) (citation omitted). Dr. Warner's opinion was based on reports

that the Plaintiff's asthma was well controlled with medication. (Doc. 13, p. 589). Finding that the record did not support the severity alleged, Dr. Warner found the Plaintiff's allegations partially credible. (Doc. 13, p. 589). It was within the ALJ's discretion to give Dr. Warner's opinion substantial weight where it was supported by and consistent with the record.

## C. Dr. Walton's Opinion Evidence

The ALJ did not err by declining to discuss Dr. Walton's opinion evidence. First and foremost, the opinion of disability falls within an area exclusively reserved to the Commissioner and is not entitled to treatment as a medical opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Stamps v. Comm'r of Soc. Sec.*, No. 1:15-CV-0557, 2016 WL 4500793, at *5 (W.D. Mich. Aug. 29, 2016) (holding that the ALJ is not bound by physician's opinion that the claimant cannot work). Accordingly, Dr. Walton's December 9, 2011 opinion that the Plaintiff is unfit for duty, absent an accommodation (Doc. 13, p. 683), treads upon the Commissioner's province of determining disability and is not entitled to weight as a medical opinion.

Even if the ALJ was required to address this opinion, the failure to do so here is harmless. For neglect of even a treating physician's opinion may be found harmless where the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Wilson*, 378 F.3d at 547; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001). Not only was this record created before the alleged onset date of disability and before the Plaintiff's symptoms improved with Advair, but this conclusory, one-sentence opinion fails to identify the evidence considered or the disability standard applied. This claim of error fails.

## D. Dr. Kadakia's Opinion Evidence

Newly submitted evidence from Dr. Kadakia may not be considered by this reviewing Court and does not warrant a sentence six remand. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The

evidence at issue is Dr. Kadakia's one-page medical source statement dated October 23, 2014. (Doc. 13, p. 1009). On this check-box form, Dr. Kadakia indicated that the Plaintiff had dyspnea on exertion, chronic cough, wheezing, sputum production, accessory respiratory muscle use, and asthma. (Doc. 13, p. 1009). According to Dr. Kadakia, the Plaintiff could stand for fifteen minutes, sit for thirty minutes, not work, lift five pounds occasionally, lift no weight frequently, and could not tolerate dust, smoke, and fumes. (Doc. 13, p. 1009). Dr. Kadakia did not explain the basis for this opinion.

Evidence submitted after an ALJ's decision cannot be considered by a court for purposes of its substantial evidence review. *Miller*, 811 F.3d at 838 (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). The only procedural avenue for considering this new evidence is on a sentence six remand by which the claimant must establish that the new evidence is (1) material, and (2) new, and that (3) good cause existed for failing to submit the evidence earlier. *Id.* at 839 (quoting 42 U.S.C. § 405(g) and citing *Foster*, 279 F.3d at 357). New evidence is "material" only if there is a reasonable probability that consideration of the evidence would have changed the Commissioner's decision. *Id.* (quoting *Foster*, 279 F.3d at 357).

Dr. Kadakia's medical source statement is not "material." The statement contains no explanation for the severe limitations suggested. Absent any explanation for these limitations, there is no reasonable probability that the Commissioner's unfavorable disability determination would change where substantial evidence supports the current decision. *See Wilson*, 378 F.3d at 547. Additionally, the Plaintiff proffers no explanation for her failure to obtain a medical source statement from Dr. Kadakia before the administrative hearing. Absent such an explanation, the undersigned does not find good cause for her failure to submit such evidence in a timely manner.

**E. Credibility Assessment**

Substantial evidence supports the ALJ's conclusion that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (Doc. 13, p. 18).

ALJs are entitled to determine the credibility of the claimant's subjective complaints. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). Where the ALJ's credibility decision is supported by substantial evidence, it is owed great weight. *Id.* (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). The Social Security regulations provide factors to consider in evaluating the limiting effects of symptoms where objective evidence has established an underlying medical condition. 20 C.F.R. §§ 404.1529(c), 416.929(c). In addition to all other relevant evidence, the ALJ will consider the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the effectiveness of medication or other treatment; other measures to relieve the symptoms; and any other relevant factors. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *2-3 (S.S.A. July 2, 1996).[5]

Though the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that the Plaintiff's subjective complaints were not entirely credible. (Doc. 13, p. 18). The ALJ correctly considered the appropriate factors in determining the weight to give the Plaintiff's complaints.

The ALJ considered the Plaintiff's daily activities, which generally involve watching television or reading at home. (Doc. 13, pp. 17, 166). She can clean using unscented cleaners and

---

[5] Effective March 16, 2016, SSR 16-3p superseded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). As the ALJ's findings and conclusions were made prior to March 16, 2016, the Court applies SSR 96-7p. *See Cameron v. Colvin*, No. 1:15-CV-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016) (explaining that SSR 16-3p is not applied retroactively).

can independently drive herself. (Doc. 13, pp. 17, 164-165). She visits the library and attends church when she is not symptomatic. (Doc. 13, pp. 18, 45, 166). Before she moved in with her father, she did her own grocery shopping. (Doc. 13, pp. 18, 42). She now does her shopping online. (Doc. 13, pp. 18, 40). Though she can go out to eat, she needs to limit exposure to pulmonary irritants. (Doc. 13, pp. 18, 41).

The ALJ considered the location, duration, frequency, and intensity of the Plaintiff's symptoms. Though the Plaintiff had alleged severe allergic responses two to three times each month which incapacitate her for three to seven days, the medical record did not support the alleged frequency and severity of allergic reactions. (Doc. 13, pp. 17-18). To the contrary, the ALJ observed only one acute exacerbation of her allergies in the relevant timeframe. (Doc. 13, p. 19). Further still, the vast majority of the Plaintiff's treatment notes revealed normal respiration. (Doc. 13, pp. 263, 269, 274, 278, 283, 288, 290, 297, 301, 306, 310, 319, 333, 338, 343, 353, 389, 423, 432, 447, 453, 505, 519, 528, 552, 557, 560, 595, 598, 603, 610, 613, 618, 626, 630, 657, 660, 663, 666, 669, 672, 734, 740, 744, 748, 777, 839, 843, 847, 851, 867, 871, 906, 910, 915, 919, 923). This is consistent with the ALJ's conclusion that the Plaintiff's symptoms were not as frequent or severe as alleged. (Doc.13, p. 18).

The ALJ took care to note that the Plaintiff's environmental allergies are exacerbated with exposure to triggers such as the chemicals used to wax and buff floors at her previous place of employment. (Doc. 13, p. 18). The ALJ found no evidence to show that her sensitivity to pulmonary irritants increased once she stopped working. (Doc. 13, p. 18).

The ALJ found that the Plaintiff's symptoms improved with medication. Once the Plaintiff began taking Advair in August 2012, her symptoms were better controlled. (Doc. 13, pp. 18, 387). Dr. Sullivan and Dr. Warner also found it significant that the Plaintiff's symptoms

17

improved with medication. (Doc. 13, pp. 416, 589). While the Plaintiff reported occasional flare ups of her symptoms, most were before the alleged onset date and before she began responding well to Advair. Only the bolded page numbers occurred after the alleged onset date. (Doc. 13, pp. 235-238, 241-242, 256-261, 267, 285, 294, 312, 321, 325, **340**, **348**, **395**, **619**, 841, 845, 917).

Last, the ALJ noted two inconsistencies in the record. The ALJ first remarked that the Plaintiff's testimony that her living situation was "like living in a bubble" was inconsistent with treatment notes showing the Plaintiff's CPAP needed to be replaced due to an accumulation of dust. (Doc. 13, p. 19). The ALJ's remark is appropriately limited to recognizing that the Plaintiff was exposed to at least some dust in her home. As the treatment notes do not explain how much dust was in the CPAP or how quickly it accumulated, no further assumptions can be drawn. The ALJ also commented that the Plaintiff did not display respiratory difficulties while present at the administrative hearing and waiting room for over an hour. (Doc. 13, p. 19). The ALJ did not err. Social Security Ruling 96-7p specifically permits an ALJ to "consider his or her own recorded observations of the individual" when making a credibility determination. SSR 96-7p, 1996 WL 374186, at *5.

As the ALJ's credibility evaluation is fully explained and is supported by substantial evidence, it should not be disturbed by this Court. This claim of error fails.

## F.  Vocational Expert Testimony

The ALJ did not err in relying on the vocational expert's testimony to conclude that the Plaintiff may perform past relevant work as it is generally performed.

The Commissioner may rely on the testimony of a vocational expert that the claimant can perform specific jobs, but the hypothetical presented to the vocational expert must accurately

depict the claimant's RFC. *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010)).

During the administrative hearing, the ALJ posed several hypotheticals to the vocational expert. The first hypothetical included a restriction of avoiding **even moderate** exposure to fumes, odors, dust, gases and poor ventilation. (Doc. 13, p. 52). The vocational expert testified that the individual described in the first hypothetical could perform past relevant work and other work. (Doc. 13, p. 53). In the second hypothetical, the individual would be required to avoid **all** exposure to fumes, odors, dust, gases and poor ventilation. (Doc. 13, pp. 53-54). The vocational expert first responded that work was available to such an individual. (Doc. 13, p. 54). When pressed by the Plaintiff's representative to consider whether the jobs identified would be available to an individual who must avoid all environmental antigens, the vocational expert stated that the individual would not be able to work or leave the house for any extended time. (Doc. 13, pp. 56-57).

The ALJ ultimately concluded that the Plaintiff must avoid **even moderate** exposure to fumes, odors, dust, gases and poor ventilation. (Doc. 13, p. 16). The vocational expert's amended testimony regarding avoiding exposure to **all** environmental antigens is irrelevant.

Insofar as the Plaintiff complains that the vocational expert did not explain the distinction between "avoid even moderate exposure" and "avoid all exposure," this claim of error is baseless. These are terms of art which need no further explanation. (Doc. 13, p. 185). *See, e.g.*, *Sherry v. Colvin*, No. 3:15-CV-00107, 2016 WL 2752654, at *2-6 (S.D. Ohio May 12, 2016), *report and recommendation adopted,* No. 3:15-CV-107, 2016 WL 4411426 (S.D. Ohio Aug. 19, 2016) (upholding disability determination where the claimant's RFC was limited to avoiding "even moderate exposure to hazards or to chemical fumes").

19

The hypothetical submitted to the vocational expert and relied upon by the ALJ accurately describes the Plaintiff's RFC. The ALJ's finding at step four that the Plaintiff can perform past relevant work is therefore supported by substantial evidence. This claim of error fails.

## V. RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that the Plaintiff's motion for judgment on the administrative record (Doc. 15) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 5th day of January, 2017.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge